UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT OWENSBORO
CIVIL ACTION NO. 4:07CV-00106-EHJ

ZITA R. ELMORE                                                                                            PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security                                            DEFENDANT

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

#### BACKGROUND

Before the Court is the complaint (DN 1) of Zita R. Elmore ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 8) and the defendant (DN 9) have filed a Fact and Law Summary.

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 7) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations. 28 U.S.C. Section 636(b)(1)(B). By Order entered January 18, 2008 (DN 7), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

#### FINDINGS OF FACT

Plaintiff filed an application for Disability Insurance benefits on September 24, 2004 (Tr. 54-58). Plaintiff alleged that she became disabled on July 20, 2004 as a result of arthritis, disc damage, pinched nerves and torn rotator cuff (Tr. 18, 54, 82). Administrative Law Judge William

G. Reamon ("ALJ") conducted a hearing on June 22, 2006 in Bowling Green, Kentucky. The plaintiff was present and represented by attorney William Sipes. Also present and testifying was Stephanie Barnes as a vocational expert.

In a decision dated January 22, 2207, the ALJ utilized the five-step sequential evaluation process to assess the merits of this adult disability claim (Tr. 18-27). At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 20, 2004, the alleged onset date (Tr. 20). At the second step, he determined that plaintiff's right shoulder (dominant) partial rotator cuff tear is a "severe" impairment within the meaning of the regulations (Tr. 20). The ALJ also determined that plaintiff does not have a "severe" mental impairment or other "severe" physical impairments (Tr. 20).

At the third step the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the impairments listed in Appendix 1 (Tr. 20). At the fourth step the ALJ found that plaintiff has the residual functional capacity to perform less than a full range of light work (Tr. 20).[1] After considering testimony from the vocational expert, the ALJ found that plaintiff is capable of performing her past relevant work as a garment inspector (Tr. 26). For the above reasons the ALJ concluded that plaintiff has not been under a "disability," as defined in the Social Security Act, from July 20, 2004 through the date of the decision (Tr. 26).

---

[1] Specifically, the ALJ found that plaintiff can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently and push/pull within these weights; he is limited to only occasional overhead reaching with the right upper extremity, but not otherwise limited on the right or left; can sit, stand and/or walk, about 6 hours each, in an 8-hour workday, with normal rest and meal breaks about every 2 hours; can do no more than occasionally climb stairs, ropes or scaffolds, but can frequently climb ramps and stairs; should avoid even moderate exposure to vibration, but has no other environmental limitations; and has no significant visual, communicative or mental limitations (Tr. 20).

Plaintiff timely filed a request for review of the ALJ's decision (Tr. 11). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7).

## CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fourth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 5-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

Plaintiff disagrees with the ALJ's finding (Finding No. 3) that she has only one severe impairment, a right-shoulder (dominant) partial rotator cuff tear (DN 8). She argues the medical evidence and opinions from treating sources demonstrate her mental impairment (depression

4

and anxiety) as well as other physical impairments (back, wrist and knee pain) are "severe" within the meaning of the regulations (DN 8).

At the second step, a claimant must demonstrate he or she has at least one "medically determinable" "severe" impairment that satisfies the 12-month duration requirement. 20 C.F.R. §§ 404.1509, 404.1520(a)(4), 404.1520(c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (*per curiam*). An impairment is "severe" if it "significantly limits" the claimant's physical or mental ability to do "basic work activities." 20 C.F.R. § 404.1520(c). An impairment is considered "non-severe" or "not severe" if it is a slight abnormality that no more than minimally affects the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521(a); Higgs, 880 F.2d at 862; Farris v. Secretary of Health and Human Services, 773 F.2d 85, 89-90 (6th Cir. 1985).

The undersigned will first address plaintiff's contention that the ALJ erred in failing to find her mental impairment is "severe."The determination whether a mental impairment "significantly limits" a claimant's ability to do one or more basic work activities is based upon the degree of limitation in four broad functional areas. 20 C.F.R. § 404.1520a(c)(3). The four broad functional areas are (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. § 404.1520a(c)(3). The degree of limitation in the first three functional areas is rated according to the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520a(c)(4). The degree of limitation in the fourth functional area is rated according to the following four-point scale: none, one or two, three, four or more. 20 C.F.R. § 404.1520a(c)(4). If the degree of limitation in the first three functional areas is found to be "none" or "mild" and the degree of limitation in the fourth area is found to be "none," then the mental impairment is considered non-severe, unless the evidence

5

otherwise indicates there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520a(d).

The ALJ adequately and accurately summarized the evidence regarding plaintiff's mental impairment, including medical evidence from the treating source, Dr. Kensicki, and the examining source, Dr. Herner.[2] Further, the ALJ recognized a conflict between the limitations

---

[2]In relevant part the administrative decision reads as follows:
"At the hearing in June 2006, attorney Sipes produced into evidence psychiatric treatment records dating back to 2004. These records were not made available to the undersigned prior to the hearing nor were they made available at the time of the initial or reconsideration level determinations. The psychiatric treatment records show the claimant initially visited with P. Kensicki, M.D., on December 21, 2004, at the suggestion of her attorney, about three months after she filed her disability application. At the evaluation, the claimant endorsed a number of clinically significant depressive and anxious symptoms, predominantly due to marital discord. Dr. Kensicki's impressions were major depression, rule out social phobia and he assessed a global assessment of functioning (GAF) of 50, indicative of "serious" symptoms affecting social and occupational functioning. Notes show Dr. Kensicki suggested she continue taking medications as prescribed, with some adjustments. Notes show the claimant did not visit with Dr. Kensicki at all from September 2005, until March 2006, a six-month gap in treatment. Subsequent to her return to treatment in March 2006, attorney Snips [sic] secured an assessment of the claimant's ability to perform work activity (mental), indicating the claimant has a majority of 'fair,' 'poor/none' abilities making the appropriate occupational, performance and personal/social adjustments required in the work place (Exhibit 12F).

In order to evaluate the claimant's mental status, she was referred for a consultative examination after the hearing on July 26, 2006. W. Herner, Psy.D., the examiner, was provided copies of the pertinent medical evidence for review and correlation, including the treatment records from Dr. Kensicki. Dr. Herner performed a clinical interview, history taking, mental status evaluation and administered psycometric testing. I.Q. testing (WIS-III) establishes the claimant has normal intelligence. On personality testing (MMPI-III), the claimant produced invalid results. Every

expressed by Dr. Kensicki and Dr. Herner (Tr. 25). The ALJ discounted the limitations expressed by Dr. Kensicki because of a sparse treatment history; evidence of malingering on psychological testing administered during the consultative examination; and reliance on plaintiff's subjective statements rather than objective observations during the course of the treating relationship (Tr. 25). Additionally, the ALJ observed that plaintiff's treating general practitioner, Dr. Duvall, opined that plaintiff was "incapable of even low stress" type jobs because of her mental impairment (Tr. 25). The ALJ discounted this opinion because it was inconsistent with the evidence as a whole, including plaintiff's own testimony that antidepressant medications have helped her symptoms (Tr. 25-26).

        Since the opinions of Drs. Kensicki and Duvall are not well supported by medically acceptable clinical and laboratory diagnostic techniques and are not consistent with other substantial evidence in the record, it was appropriate for the ALJ to discount their opinions. Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d)(2); Bogle v. Sullivan, 998 F.2d 342, 347-348 (6th Cir. 1993); Crouch v. Secretary of Health and Human Services, 909 F.2d 852, 857 (6th Cir. 1990). Moreover, the ALJ complied with the requirement that he set forth an explanation for the weight accorded to an opinion from treating source. Social Security Ruling 96-2p; 20 C.F.R. § 404.1527(d)(2); Wilson

---

> clinical scale was evaluated except for two. According to Dr. Herner, the validity scales indicate questionable reporting and perhaps attempts to look more ill than she actually might be (i.e., malingering or "faking bad"). According to Dr. Herner, the MMPI results were so invalid, an interpretation could not be completed (Exhibit 14F). Attorney Sipes was offered the opportunity to comment on the results of the consultative psychological evaluation, but she did not respond (Exhibit 6B)."

(Tr. 24-25). The undersigned has carefully reviewed the above cited medical evidence in the administrative record (Tr. 203-216, 223-232) and concludes that the ALJ has provided an accurate summary of this medical evidence.

v. Commissioner of Social Security, 378 F.3d 541, 545-546 (6th Cir. 2004).

The ALJ relied on the opinions of Dr. Herner to make his findings regarding the degree of limitation in the four broad functional areas (Tr. 25-26). Since Dr. Herner's opinions are consistent with the evidence of record and are supported by medically acceptable clinical and laboratory diagnostic techniques,[3] substantial evidence supports the ALJ's findings regarding the degree of limitation in these four broad functional areas. 20 C.F.R. § 404.1527(d). In sum, the ALJ's finding that plaintiff's mental impairment is non-severe, is supported by substantial evidence in the record and fully comports with applicable law.

The undersigned will now address plaintiff's contention that the ALJ erred in failing to find her other physical impairments are "severe." Plaintiff relies on her subjective statements and some objective evidence (e.g., x-rays) to substantiate her argument that she has other "severe" physical impairments (DN 8). While this objective evidence is helpful in diagnosing a condition it does not quantify the level of functional limitation imposed by the condition. Moreover, since the opinions of Drs. Rogers and Duvall are the product of plaintiff's subjective statements, rather than objective functional testing, their opinions do not constitute substantial evidence on the question of whether an impairment is "severe" within the meaning of the regulations. Equally important, in light of the Sixth Circuit's holding in Maziarz v. Secretary of Health and Human Services, 837 F.2d 240, 244 (6th Cir. 1987), if the ALJ erred in failing to find the additional physical impairments are

---

[3] Plaintiff challenges Dr. Herner's opinion - - plaintiff's scores on the MMPI-II are invalid - - by citing her performance on the Rey Memorization Test which is designed to detect malingering (DN 8). However, plaintiff's argument is misguided because it ignores the reason why her scores on the MMPI-II were deemed invalid. Specifically, numerous validity scales on the MMPI-II indicated questionable reporting and perhaps attempts to magnify symptoms (Tr. 227). Thus, plaintiff's level of performance on the Rey Memorization Test confirms, rather than rebuts, the accuracy of the validity scales on the MMPI-II.

8

"severe," the error is harmless.

Next, plaintiff challenges the ALJ's residual functional capacity findings (DN 8). Specifically, she asserts the combined effect of her physical impairments prevent her from performing even sedentary work (DN 8).

The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546. In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make credibility findings. 20 C.F.R. § 404.1529; Social Security Ruling 96-7p.

The ALJ partially credited plaintiff's testimony regarding limitations imposed by her physical impairments in light of the objective medical evidence, the frequency of her treatment and the types of treatment that she received for her impairments (Tr. 22). Since the ALJ found the objectively established medical conditions were not of such severity that they could reasonably be expected to produce the alleged disabling pain and other symptoms, the ALJ appropriately considered other information and factors that are relevant to assessing plaintiff's subjective statements regarding pain and other symptoms. Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986); 20 C.F.R. § 404.1529(c); Social Security Ruling 96-7p. For example, the ALJ considered the fact that plaintiff had been prescribed Mobic for pain, on a routine basis, and had not been referred for pain management (Tr. 22). 20 C.F.R. § 404.1529(c)(3)(iv). Additionally, the ALJ considered the fact that plaintiff had not seen her treating orthopedist in about

two years (Tr. 22). 20 C.F.R. § 404.1529(c)(3)(v). Moreover, the ALJ considered conflicts between plaintiff's subjective statements and multiple examinations that had been normal or essentially normal with the exception of limited range of motion in plaintiff's right shoulder (Tr. 22-23). 20 C.F.R. § 404.1529(c)(4).

The ALJ found from the medical record and plaintiff's testimony that she does not suffer pain and limitation to the extent she testified (Tr. 22-23). In the absence of detailed corroborating evidence of her subjective complaints, it becomes the duty of the ALJ to resolve the issue of her credibility. Since tolerance of pain and other symptoms is a highly individualized matter, and a determination of disability based on pain and other symptoms depends, of necessity, largely on the credibility of the claimant, the conclusion of the ALJ, who has the opportunity to observe the claimant's demeanor, "should not be discharged lightly." Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984) (citation omitted). The undersigned concludes that the ALJ's findings regarding plaintiff's credibility are supported by substantial evidence and fully comport with applicable law.

The ALJ accurately summarized the medical evidence from the treating sources regarding plaintiff's physical impairments (Tr. 21-22). The ALJ discounted the functional assessment prepared by plaintiff's treating general practitioner, Dr. Duvall, because it was not supported by objective findings, the doctor's own treatment notes, the level of prescribed treatment, or what is medically reasonable in light of plaintiff's impairments (Tr. 23). The ALJ noted that the treating orthopedist, Dr. Rogers, had not indicated any work-related limitations (Tr. 24). Further, the ALJ discounted the functional limitations expressed by the non-examining State agency physicians because they were inconsistent with the evidence as a whole (Tr. 24). The ALJ considered the evidence in the record and made his residual functional capacity findings. Those

findings are supported by substantial evidence in the record.

Next, plaintiff challenges the ALJ's finding that she is capable of performing her past relevant work as a garment inspector (DN 8). Plaintiff's argument is, however, contingent upon demonstrating that her mental and other physical impairments are "severe" (DN 8).

The ALJ relied on testimony from the vocational expert to support his finding that plaintiff is capable of performing her past relevant work as a garment inspector (Tr. 26). A vocational expert's testimony can constitute substantial evidence to support such a finding provided the testimony is based on a hypothetical question that accurately portrays the limitations imposed by the claimant's physical and mental impairments. Varley v Secretary of Health and Human Services, 820 F.2d 777, 779 (6th Cir. 1987). Here, the relevant hypothetical question articulates the limitations in the ALJ's residual functional capacity findings (Tr. 20, 285-286). Those findings are supported by substantial evidence in the record. Therefore, the vocational expert's testimony is based on a hypothetical question that accurately portrays the limitations imposed by plaintiff's impairments. For this reason, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that plaintiff is capable of performing her past relevant work as a garment inspector.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings are supported by substantial evidence, and it is recommended that judgment be granted for the Commissioner.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies: Counsel